UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN CRONIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil Action No. |
| v. | ) 13-11169-FDS |
| | ) |
| COMMISSIONER OF PROBATION, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER ON
## PETITION FOR HABEAS CORPUS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody. Petitioner Stephen Cronin was charged with operating under the influence of liquor (third offense) and negligent operation of a motor vehicle. On September 20, 2011, a jury convicted him on both counts. He was sentenced to a term in the house of corrections and a three-year term of probation. He is currently on supervised probation, which is scheduled to expire in 2016. He contends that the state prosecutor improperly used his post-arrest silence against him at trial in violation of his rights under the Fifth and Fourteenth Amendments. He now seeks habeas relief.

Respondent, the Commissioner of Probation, contends that petitioner failed to meet the burden of proof for habeas petitions under § 2254, as the state-court decision that he challenges is not contrary to clearly established federal law. Respondent also argues that any error involved in petitioner's claim was harmless.

For the reasons set forth below, the petition will be denied.

I.   **Background**

   A.   **Factual Background**

At the trial, two Braintree police officers testified for the prosecution, and petitioner testified in his own defense. The substance of the relevant evidence is laid out below.[1]

Officer David Jordan testified that he was sitting in his car in a Motel 6 parking lot working a detail during the early morning hours of May 10, 2009. (S.A. at 222). He heard screeching tires and saw a minivan enter the parking lot where he was parked. (S.A. at 225-26). He watched the minivan drive over a traffic island, come to an abrupt stop, and turn into a parking space. (S.A. at 226). He testified that he saw Stephen Cronin drive the minivan, that he saw him get out of the driver's side of the minivan, and that he was visibly intoxicated. (S.A. at 230-32).[2] Jordan approached the minivan, called for backup, and spoke with the driver, whom he identified as Cronin. Officer Brian Eng, who responded to Jordan's backup call, arrived on the scene several minutes later. Eng testified that Cronin told them that he was coming back to Braintree from Jamaica Plain and that he had consumed a "few cocktails." (S.A. at 244). Eng testified that Cronin lost his balance during a field sobriety test. Cronin was then placed under arrest. (S.A. at 247-48).

Cronin testified in his own defense. He stated that while he had been drinking, he was not the one driving the minivan. (S.A. at 259). He testified that he spent the day drinking in the hotel room where he and his roommate were staying, and that his roommate took the minivan

---

[1] The facts of the case were not addressed at length in the appellate decision. The summary of testimony in this memorandum is from trial transcript and respondent's Supplemental Answer ("S.A.").

[2] Officer Jordan testified that petitioner was stumbling; that he lost his balance several times; that he had to lean on the van to catch himself from falling; that he had glassy eyes and slurred speech; that he had stains on his shirt and pants; and that he was surrounded by an ambient odor of alcohol. (S.A. at 230-32).

2

when she went to get take-out food late that night. (S.A. at 259). He called her and asked her to come back because he wanted cigarettes, which he had stored in the minivan. (S.A. at 260). When she arrived, he let her in the room before going to get the cigarettes and a change of clothes. (S.A. at 260-61). He testified that he opened the driver's side door to pop the trunk's lock, and that at that point Officer Jordan approached him. (S.A. at 261-62). Cronin did not tell the officers that his roommate was the driver. (S.A. at 265-66). His counsel asked Cronin why he did not tell the police about his roommate, to which Cronin responded that she had several warrants out for her arrest and he did not want to get her in trouble. (S.A. at 266).

      On cross-examination, the prosecution began as follows

      Q      So you never told the officers anything about what you're telling us today?

      . . .

      A      No. No.

      Q      You never told either of these officers?

      A      No.

      Q      You never told them during the course of your booking?

      A      No.

      Q      You thought you were arrested wrongly for a crime you didn't do?

      A      Yes.

      Q      But you never told the police anything about this over the hours you were with them?

      A      No.

(S.A. at 267-68). The prosecution then moved on to other topics. (S.A. at 268-74). Later, in his closing argument, the prosecution again raised Cronin's failure to tell the story at the time of the

incident, stating, "He never said he wasn't driving. He never said anyone else was driving. He said nothing about this [other] individual . . . . [H]e's getting arrested, and he says nothing." (S.A. at 317-18).

### B. Procedural History

On September 20, 2011, the jury convicted Cronin for (1) operating under the influence of liquor (third offense) and (2) negligent operation of a motor vehicle. The court sentenced him to two and one-half years in the house of corrections; he was ordered to serve eighteen months, with the balance suspended, and a three-year term of probation.

Cronin appealed the conviction to the Massachusetts Appeals Court. He contended (1) that the Commonwealth violated his constitutional rights by improperly impeaching him based on his post-arrest silence; (2) that in its closing arguments, the Commonwealth impermissibly commented on his failure to call his former roommate as a witness; (3) that the prosecutor made eleven misstatements of the evidence during closing argument in an attempt to diminish his credibility; and (4) that he received ineffective assistance of counsel because counsel failed to move to strike the officer's statement that defendant was not on the motel's guest registry. The Appeals Court rejected those arguments and affirmed the conviction. *Commonwealth v. Cronin*, 82 Mass. App. Ct. 1124 (2012).

On February 4, 2013, the Supreme Judicial Court denied his application for leave to obtain further appellate review. *Commonwealth v. Cronin*, 464 Mass. 1104 (2013). Cronin filed a petition for habeas corpus on May 10, 2013.

## II. Standard for Habeas Review

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas petition "with respect

to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The petition asserts a claim solely on the first ground.

The key inquiry in determining whether a state court decision is contrary to established federal law as determined by the Supreme Court is "whether a Supreme Court rule—by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations—can fairly be said to *require* a particular result in a particular case." *Kibbe v. DuBois*, 269 F. 3d 26, 35 (1st Cir. 2001) (citation and quotation omitted) (emphasis in original). Stated differently, "a federal habeas court may grant the writ if the state court arrived at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state-court decision may be set aside as an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply." *Kibbe*, 269 F. 3d at 26 (*quoting Williams*, 529 U.S. at 362). "[S]ome increment of incorrectness beyond error is required." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). "The increment need not necessarily be great, but it must be great enough

to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* at 36 (*quoting Francis S. v. Stone*, 221 F. 3d 100, 111 (2d Cir. 2000)).

**III.** **Analysis**

Petitioner contends that the Supreme Court's decision in *Doyle v. United States*, 426 U.S. 610 (1976), controls this case and requires a ruling in his favor. Pet. Mem. at 8-9.

In *Doyle* and its companion case, the defendants were charged with selling ten pounds of marijuana to a local narcotics bureau informant. 426 U.S. at 611-13. The informant set up a meeting between the parties and allegedly gave the defendants $1320 for ten pounds of marijuana. *Id.* After the alleged transaction, the defendants attempted to chase the informant down; the prosecutors argued that the chase was a result of the informant not paying enough money for the drugs. *Id.* at 612. Both defendants were arrested soon after and read their *Miranda* rights. *Id.*

Through cross-examination, defendants' lawyers established that none of the police officers on the scene actually witnessed the alleged transaction. *Id.* at 612. When Doyle and his alleged accomplice took the stand in their respective trials they alleged, for the first time, that the informant framed them. According to the defendants, the arrangement was for the informant to sell them marijuana, not the other way around. *Id.* at 613. They stated that they sought to purchase only one pound of marijuana, but that the informant showed up with ten pounds and proceeded to throw $1320 into their car before absconding with the drugs. *Id.* The defendants testified that they then attempted to chase the informant down to try and figure out what was going on and why he threw the money in their car. *Id.* Unable to refute this story with direct evidence, the prosecutors in both cases cross-examined the defendants as to why, if the

6

informant in fact had framed them, they did not tell that to the officers at the time of arrest. *Id.*

The Supreme Court reversed the convictions, holding that the "use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619.

Here, the state court determined, in relevant part, that "it was proper for the prosecutor to cross-examine the defendant as to his postarrest silence because the defendant's explanation for his silence was the basis of his defense." *Cronin*, 82 Mass. App. Ct. 1124, at *1. It also ruled that "during closing arguments, the prosecutor properly focused on the inconsistencies between what defendant told police at the scene and his trial testimony relating to his pretrial silence as to the subsequent claim that Michele was the driver of the vehicle." *Id.* In so ruling, the state court relied on *Doyle* and its progeny.[3] Petitioner contends that the state court's decision to uphold his conviction was contrary to, or involved an unreasonable application of, the holding in *Doyle*.

### 1. <u>Whether the Decision Was Contrary to Established Federal Law</u>

Petitioner contends that the facts here are indistinguishable from *Doyle*, and that the state court was required to apply in his favor the general *Doyle* rule "that the use for impeachment purposes of petitioner['s] silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." *Doyle*, 426 U.S. at 620; *see* Pet. Mem. at 12-13. Petitioner argues that the failure to apply the general rule was contrary to

---

[3] Among other things, the state court relied on *Commonwealth v. Adams*, 434 Mass. 805 (2001), and *Commonwealth v. Sherick*, 401 Mass. 302 (1987). In *Adams*, the Supreme Judicial Court concluded that because the defendant had introduced his post-arrest silence as part of his trial strategy, the prosecutor's use of that evidence did not create a substantial likelihood of a miscarriage of justice. *Adams*, 434 Mass. at 813; *see Cronin*, 82 Mass. App. Ct. 1124, at *1 (discussing *Adams*). In *Sherick*, the court ruled that the "evidence of the defendant's guilt was not his pretrial silence but his pretrial statements contrasted with his trial testimony." 401 Mass. at 305. It found that the prosecutor "was not trampling on his constitutional right to remain silent" but instead "alerting the jury to possible flaws in the defendant's testimony." *Id.*; *see Cronin*, 82 Mass. App. Ct. 1124, at *1 (discussing *Sherick*).

7

established law under § 2254(d)(1).

In fact, however, there are critical factual differences between this case and *Doyle*. In *Doyle*, it appears that defense counsel did not ask the defendants on direct examination why they did not tell their exculpatory story to the police. *See* 426 U.S. at 612-16. The defendants testified to their version of the events leading up to their arrest; the prosecution then cross-examined them as to why, if they had in fact been framed, they did not relate that to the police.[4] Here, in contrast, petitioner's own lawyer asked him on direct examination why he did not tell the police his exculpatory story. While the cross-examinations here and in *Doyle* resemble one another, the direct examinations were materially different.[5] The attorney in *Doyle* clearly did not open the door to cross-examination as to the motive for remaining silent. The parties here dispute the extent to which petitioner's counsel opened the door, but the state court apparently found that he had. *See Cronin*, 82 Mass. App. Ct. 1124, at *1; Pet. Mem. at 11-15; Gov't Mem. at 10-13; Pet. Reply Mem. at 2-7.

Furthermore, *Doyle* applies to post-arrest silence in situations where defendants have been read their *Miranda* rights. However, there is an exception for pre-*Miranda* silence. *See Fletcher v. Weir*, 455 U.S. 603, 605-06 (1982). The record here is unclear as to when exactly petitioner was read his *Miranda* rights. However, some aspects of the cross-examination do appear to address events that took place before petitioner was arrested—that is, while he was with the officers at the scene, and before he had been read his *Miranda* rights.

---

[4] In *Doyle*, the defendants argued that they met with a police informant with the intention to purchase marijuana, as opposed to the government's contention that they were selling it. 426 U.S. at 612-13. They stated for the first time at trial that the informant threw $1320 into their car and then ran away without selling them the marijuana. *See id.*

[5] *See* Petition for Habeas Corpus, Ex. F.

8

In sum, the facts are materially distinguishable from those in *Doyle*. This Court therefore cannot say that the law required a particular outcome and cannot find that the state court decision was contrary to clearly established federal law as determined by the Supreme Court. *See Kibbe*, 236 F.3d at 36.

### 2. Whether the Decision Was an Unreasonable Application of Federal Law

Next, petitioner contends that the state court unreasonably extended a legal principle from *Doyle* to a new context where it should not apply. Pet. Mem. at 8-9.

The state court based its decision on two factors. *See Cronin*, 82 Mass. App. Ct. 1124, at *1. It reasoned (1) that petitioner introduced the evidence of his post-arrest silence as part of his trial strategy, and (2) that petitioner attempted to convince the jury that he made a rational decision to remain silent in order to protect his roommate. Consequently, it concluded that the prosecutor appropriately asked about and commented on petitioner's post-arrest silence because it was the basis for his defense. *Id.*

The circuits that have addressed the issue are divided as to whether impeachment with post-arrest silence is permitted if the defendant opens the door to the issue of his silence on direct examination. *Compare United States v. Gant*, 17 F.3d 935, 941 (7th Cir. 1994) ("If, however, the defendant opens the door to government questioning by his own remarks about his post-arrest behavior or by defense counsel's questioning . . . the government may use defendant's silence for the limited purpose of impeaching his testimony." (internal citation omitted)); *United States v. Shue*, 766 F.2d 1122, 1130 (7th Cir. 1985) (same) *with United States v. Fairchild*, 505 F. 2d. 1378, 1382 (5th Cir. 1975) (expressing "serious doubts that [the defendant's] silence following his arrest and following the receipt of his Miranda warnings was

9

admissible for impeachment purposes").

The question in this case is thus, at best, a close call, in light of the fact that petitioner's lawyer opened the door to the issue; different circuits would likely come to different conclusions when faced with this set of facts. The record is also somewhat ambiguous as to when petitioner was read his *Miranda* rights, and to what extent the questioning even addressed post-*Miranda* silence. Under the circumstances, the Court cannot conclude that the state-court decision was an unreasonable application of clearly established federal law as determined by the Supreme Court.

### 3. **Harmless Error**

Even if a state-court decision is contrary to, or an unreasonable application of, established federal law, a petitioner is not entitled to habeas relief for a trial error unless harm resulted. The "standard for determining whether habeas relief must be granted is whether the *Doyle* error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht* v. *Abrahamson*, 507 U.S. 619, 623 (1993) (*quoting Kotteakos* v. *United States*, 328 U.S. 750, 776 (1946)).

Petitioner faced evidence of guilt that "if not overwhelming [was] certainly weighty." *Id.* at 639. Officer Jordan testified on direct examination, cross-examination, and rebuttal that he kept visual contact with the driver of the minivan at all times while it entered the parking lot, that petitioner was the driver and sole occupant of the minivan, and that he did not see any woman in the minivan or in the area. (S.A. at 228-29, 278). That testimony directly contradicted petitioner's assertion that he did not drive the car. Trial counsel did not contest Officer Jordan's testimony as to the identity of the driver on cross-examination. (S.A. at 234-39). Furthermore, Officer Eng testified that petitioner told him "he'd come from Jamaica Plain where he had a few

10

cocktails." (S.A. at 244). Petitioner did not contest that he was intoxicated, nor did he contest that the car came to the Motel 6 parking lot from a public way.

Moreover, the prosecution cross-examined petitioner on a number of topics. Cross-examination began with four questions about petitioner's silence and his failure, pre- and post-arrest, to tell the police officers his exculpatory story. (S.A. at 267-68). It then proceeded with questions about petitioner's alcohol consumption, his work on the day in question, how he drove the minivan, how the police officers approached him, the location of his roommate, the current location of his roommate, and his difficulty standing during the field sobriety tests. (S.A. at 268-74). The allegedly impermissible questions constitute roughly half of one page of the trial transcript in an eight-page cross-examination. The prosecution only briefly raised the issue of petitioner's silence during closing argument.

In light of the evidence in the record and viewing the trial as a whole, any potential *Doyle* error cannot be said to have "substantially influence[d] the jury's verdict" and therefore no actual harm to petitioner resulted. *Brecht*, 507 U.S. at 639.

### III. Conclusion

For the foregoing reasons, the petition for habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 2, 2014                                      United States District Judge